SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 FEB 23  P 2: 44

DEPUTY CLERK _____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | |
| | | No. |
| v. | | |
| | | **FILED UNDER SEAL** |
| BRADLEY J. HARRIS | (01) | |
| AMY L. HARRIS | (02) | **3-17CR-103-M** |
| MELANIE L. MURPHEY | (03) | |
| PATRICIA B. ARMSTRONG | (04) | |
| MARK E. GIBBS, M.D. | (05) | |
| LAILA N. HIRJEE, M.D. | (06) | |
| SYED M. AZIZ, M.D. | (07) | |
| REZIUDDIN SIDDIQUE, M.D. | (08) | |
| CHARLES R. LEACH, M.D. | (09) | |
| JESSICA J. LOVE | (10) | |
| ALI RIZVI | (11) | |
| TAMMIE L. LITTLE | (12) | |
| MARY JACLYN PANNELL | (13) | |
| TARYN E. STUART | (14) | |
| SLADE C. BROWN | (15) | |
| SAMUEL D. ANDERSON | (16) | |

INDICTMENT

The Grand Jury charges:

At all times material to this Indictment:

General Allegations

1.      Novus Health Services and Optim Health Services, Inc. (collectively

Novus) were approved hospice services agencies in the Medicare and Medicaid systems,

operated and co-owned by defendant **Bradley Harris**, who was a certified public

accountant without any medical licenses.  **Bradley Harris** was the Chief Executive

Officer (CEO) and was listed with Medicare and Medicaid as the administrator of both

Indictment - Page 1

Novus companies. **Bradley Harris** operated the two companies essentially as one: they were operated out of the same office space, with the same employees, and managed with the same electronic medical records database.

2.    **Bradley Harris** intended to grow Novus quickly by increasing the number of patients it served, and then selling the company for a profit. In order to accomplish this goal, while also making Novus profitable, **Bradley Harris** conspired with the defendants and others to effect a scheme and artifice to defraud Medicare and Medicaid, which is described in the following paragraphs.

3.    As a result of this scheme, from around July 2012 to around September 2015, Novus billed Medicare and Medicaid more than sixty million dollars for fraudulent hospice services, of which more than thirty-five million dollars was paid to Novus.

## I.    The Medicare Program Generally

4.    The Medicare Program (Medicare) was a federal health care benefit program providing benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the United States Department of Health and Human Services through its agency, the Centers for Medicare & Medicaid Services. Medicare Part A helped pay for inpatient hospital stays, skilled nursing facility services, home health care, and hospice care provided by qualified providers.

5.    Medicare, including Medicare Part A, was a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

6.     The Medicaid program was a state-administered health insurance program funded predominantly by the United States Government and administered in Texas by the State of Texas. The Medicaid program helped pay for reasonable and necessary medical procedures and services, including hospice, provided to individuals who were deemed eligible under state low-income programs.

7.     Medicaid was also a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

II.     Medicare Covered Hospice Services

8.     Hospice care was a set of services meant to provide for the physical, psychosocial, spiritual, and emotional needs of a terminally ill patient or the patient's family members. Hospice care was often referred to as palliative care, which meant care that was intended to treat suffering rather than to cure illness.

9.     Physicians, clinics, and other health care providers, including hospice services agencies, that provided services to Medicare beneficiaries were able to apply for and obtain a Medicare provider number. A health care provider with a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to truthfully set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider that rendered the services.

10. According to Medicare regulations, in order for hospice care to be covered by Medicare, a beneficiary had to be:

(a) entitled to Medicare Part A; and

(b) certified as terminally ill.

11. A beneficiary's initial certification of terminal illness had to be written and signed by the physician medical director of the hospice company to which the beneficiary was being certified or the physician member of the hospice interdisciplinary group, and the individual's attending physician, if the individual had an attending physician. The signed certification of terminal illness had to contain the following:

(a) A prognosis for a life expectancy of six months or less if the terminal illness ran its normal course;

(b) Clinical information and other documentation that supported the prognosis;

(c) A brief narrative explanation of the clinical findings that supported a life expectancy of six months or less.

12. A beneficiary could be certified in this manner for two ninety-day hospice benefit periods, or for about six months. Before a beneficiary could be certified for a third sixty-day hospice benefit period, Medicare required that a licensed physician or nurse practitioner have a face-to-face encounter with the beneficiary to determine whether they were still hospice eligible. The physician or nurse practitioner had to then attest in writing that he or she had a face-to-face encounter with the patient, including the date of the visit. The narrative associated with this third benefit period, and every

subsequent sixty-day recertification, needed to include an explanation of why the clinical findings of the face-to-face encounter supported a life expectancy of six months or less.

### III.   Continuous Care

13.   Hospice services could be billed to Medicare as routine or continuous care. Continuous care covered nursing care for as much as a twenty-four hours per day during periods of crisis.  A period of crisis was a period in which the individual required continuous care which was predominantly nursing care to achieve palliation or management of acute medical symptoms.  The decision to place a Medicare beneficiary on continuous care needed to be made in accordance with an individualized, physician-established plan of care, and a hospice company had to ensure that these direct patient care services were clearly documented and were reasonable and necessary.

14.   Medicare payments for claims for continuous care were substantially greater than the payments for claims for routine hospice services.  For example, in 2013 Medicare paid hospice providers a daily rate of $153.45 for routine care.  Daily rates for continuous care ranged from $303.60 to $895.56, depending on the amount of continuous care provided, from a minimum of eight hours to a maximum of twenty-four hours per day.

### IV.   The Defendants

15.   Defendant **Bradley Harris** founded and served as the Chief Executive Officer (CEO) of Novus.  **Bradley Harris** was a certified public accountant without any medical licenses.

16.     Defendant **Amy Harris** co-founded Novus and worked as the Vice President of Patient Services.  Around October 2013, **Amy Harris** married **Bradley Harris**.

17.     Defendant **Melanie Murphey** worked as Novus's Director of Operations.

18.     Defendant **Mark Gibbs,** a licensed physician in Texas, worked as a medical director for Novus from around May 2012 to around October 2015.

19.     Defendant **Laila Hirjee**, a licensed physician in Texas, worked as a medical director for Novus from around May 2012 to around June 2014.

20.     Defendant **Syed Aziz**, a licensed physician in Texas, worked as a medical director for Novus from around September 2012 to around October 2015.

21.     Defendant **Reziuddin Siddique,** a licensed physician in Texas, worked as a medical director for Novus from around September 2012 to around October 2015.

22.     Defendant **Charles Leach**, a licensed physician in Texas, worked as a medical director for Novus from around July 2014 to around October 2015.

23.     Defendant **Jessica Love**, employed by Novus from around August 2012 to around July 2014, worked as a Registered Nurse and as a District Manager.

24.     Defendant **Tammie Little**, employed by Novus from around April 2014 to around October 2015, worked as a Registered Nurse and as a District Manager.

25.     Defendant **Ali Rizvi** was the owner of a separate physicians' home visit company.

26.     Defendant **Patricia Armstrong**, employed by Novus from around April 2013 to around October 2015, worked as a Registered Nurse and as the primary triage nurse for after-hours patient care.

27.     Defendant **Mary Jaclyn Pannell**, employed by Novus from around May 2012 to around October 2015, worked as Novus's Director of Nursing.  **Mary Jaclyn Pannell** was known as **Jaclyn Pannell.**

28.     Defendant **Taryn Stuart,** then known as **Taryn Wiggins**, employed by Novus from around July 2012 to around October 2015, worked as a Licensed Vocational Nurse.

29.     Defendant **Slade Brown,** employed by Novus from around April 2014 to around October 2015, worked as a Director of Marketing.

30.     Defendant **Samuel Anderson** co-founded Novus and worked as a Vice President of Marketing.

## Count One
### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

31.     The allegations contained in paragraphs one through thirty of this Indictment are realleged and incorporated by reference as though fully set forth herein.

32.     From in or around May 2012 and continuing through in or around October 2015, in the Northern District of Texas, and elsewhere, **Bradley Harris**, **Amy Harris**, **Melanie Murphey**, **Patricia Armstrong**, **Mark Gibbs**, **Laila Hirjee**, **Syed Aziz**, **Reziuddin Siddique**, **Charles Leach**, **Jessica Love**, **Ali Rizvi, Tammie Little**, **Mary Jaclyn Pannell, Taryn Stuart, Slade Brown**, and **Samuel Anderson,** did knowingly, intentionally, and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the grand jury, to commit certain offenses against the United States, that is, to knowingly and willfully execute, and attempt to execute, a scheme and artifice: (a) to defraud Medicare and Medicaid, health care benefit programs as defined in 18 U.S.C. § 24(b); and (b) to obtain money and property owned by and under the custody and control of Medicare and Medicaid, health care benefit programs as defined in 18 U.S.C. § 24(b), by means of materially false and fraudulent pretenses, representations, and promises, in connection with payments for health care services, namely hospice services, in violation of 18 U.S.C. § 1347.

### I.     Purpose of the Conspiracy

33.     It was the purpose of the conspiracy for the defendants and others to unlawfully enrich themselves by: (a) submitting false and fraudulent claims to Medicare

and Medicaid for hospice services; and (b) concealing from Medicare and Medicaid the nature and existence of the conspiracy.

## II.    Manner and Means of the Conspiracy

34.    The manner and means by which the defendants and others sought to accomplish the purpose of the conspiracy included, among others, the following, all of which occurred in the Northern District of Texas and elsewhere:

### A. Scheme and artifice to defraud

35.    **Bradley Harris**, the defendants, and others engaged in a scheme and artifice to defraud Medicare and Medicaid by submitting and causing the submission of false and fraudulent claims for hospice services. **Bradley Harris**, the defendants, and others conspired to commit a range of fraudulent conduct to effect this scheme, including 1) submitting false claims for hospice services, 2) submitting false claims for continuous care hospice services, 3) recruiting ineligible hospice beneficiaries by providing kickbacks to referring physicians and healthcare facilities, and 4) falsifying and destroying documents to conceal these activities from Medicare.

### B. Submission of false claims for hospice services

36.    As part of this scheme, **Mark Gibbs**, **Laila Hirjee**, **Syed Aziz**, **Reziuddin Siddique**, and **Charles Leach**, who were licensed physicians and paid Novus medical directors, provided little to no oversight of Novus's hospice patients. Instead, care was directed primarily by Novus nurses and by **Bradley Harris**. Defendants and others who were not physicians would determine whether a beneficiary would be certified for, recertified for, or discharged from hospice; whether they would be placed on continuous

care; and how and to what extent they would be medicated with drugs such as morphine and hydromorphone. These decisions on medical care were often driven by financial interest rather than patient need. **Bradley Harris**, the defendants, and others would decide whether to place, keep, or discharge a beneficiary from hospice depending on how that decision would affect Novus's ability to bill Medicare. For example, on December 3, 2014, **Bradley Harris** texted **Jaclyn Pannell** an instruction to falsify a doctor's order that beneficiary J.M. did not qualify for a hospice recertification: "Document u went to recert and she doesn't qualify." **Jaclyn Pannell** responded, "ok." **Bradley Harris** instructed, "Write this Drs order in [the electronic medical records database] and date it 11/29/2014." **Bradley Harris** then sent **Jaclyn Pannell** a falsified doctor's order. **Jaclyn Pannell** texted back, "ok done with her then."

37.     As part of this scheme, the defendants and others identified ineligible beneficiaries for hospice service in order to increase Novus's patient census. For example, **Ali Rizvi** provided **Tammie Little** and **Bradley Harris** with access to the electronic records database of the physicians' home visit company that **Ali Rizvi** owned. **Patricia Armstrong** had similar access to the database of another medical services company. Both **Tammie Little** and **Patricia Armstrong** used this access to identify Medicare beneficiaries for hospice recruitment. Once an ineligible beneficiary was identified, defendants **Patricia Armstrong, Tammie Little, Amy Harris, Slade Brown, Jessica Love** and others would visit the beneficiaries and have them (or their agents) sign paperwork electing Novus hospice. In some cases, **Amy Harris** would falsely tell a beneficiary that she was from their insurance company or worked for their doctor, and

was recommending Novus hospice in that capacity.  After an admission was complete, defendant **Mark Gibbs, Laila Hirjee, Syed Aziz, Reziuddin Siddique,** or **Charles Leach** would sign a certificate of terminal illness indicating that they had determined that the beneficiary was eligible for hospice services regardless of whether this was true or not, and in violation of Medicare regulations.

38.     As a further part of this scheme, defendants **Bradley Harris, Melanie Murphey, Patricia Armstrong, Jessica Love, Tammie Little, Jaclyn Pannell,** and others collaborated with defendants **Mark Gibbs, Laila Hirjee, Syed Aziz, Reziuddin Siddique,** and **Charles Leach** to prepare recertifications of terminal illness for beneficiaries already on hospice, which falsely indicated that the beneficiaries continued to be hospice eligible.  When Medicare required a face-to-face encounter with a beneficiary prior to a recertification, **Mark Gibbs** or **Laila Hirjee** would falsely indicate that they had done the face-to-face encounter when this would not have been possible. For example, **Mark Gibbs** signed 19 face-to-face evaluations dated July 18, 2013 that, if truly completed, would have meant **Mark Gibbs** traveled approximately 200 miles to 19 different locations before 1:30 PM in a single day.  **Laila Hirjee** signed and dated face-to-face recertifications that supposedly took place in Texas, when travel records show she was in places like Hawaii or Mexico.

39.     Novus medical directors, including **Mark Gibbs, Laila Hirjee, Syed Aziz, Reziuddin Siddique,** and **Charles Leach**, would allow **Bradley Harris** and **Melanie Murphey** to routinely log into Novus's electronic medical records database using the medical directors' login information, where **Bradley Harris** or **Melanie Murphey** would

create and sign physician orders for services that had not been performed or had not been performed by the medical directors.  On December 8, 2014, **Bradley Harris** texted **Mark Gibbs,** "Did u change your password. . . . What is it I thought it's [password]."  **Mark Gibbs** texted back, "I'm not sure it always just auto logs me in. Try one less 3."  On December 13, 2014, **Bradley Harris** texted **Melanie Murphey** to complain that he was having trouble logging into the database as **Syed Aziz.  Melanie Murphey** texted, "Like I literally just did it. I just logged in to sign orders. Hang on."  **Bradley Harris** texted back, "Please make it [password] like everyone else."

C.  Submission of false claims for continuous care services

40.     As a further part of this scheme, Novus nurses—or **Bradley Harris** himself—would direct that beneficiaries be placed on continuous care, whether the beneficiaries needed this service or not.  This decision would often be made without any consultation with a physician.  **Patricia Armstrong** or others would falsify a continuous care physician's order, which would be uploaded into Novus's electronic medical records database.

41.     When a beneficiary was on continuous care, the Novus nurses—often at **Bradley Harris's** direction—would administer high doses of Schedule II controlled medications such as morphine or hydromorphone, whether the beneficiary needed the medication or not.   The defendants and others obtained these Schedule II medications with "C2" prescription forms (used for the prescription of controlled substances) which had been unlawfully pre-signed by **Mark Gibbs**, **Charles Leach, Laila Hirjee** and others, then filled out on a later date by **Melanie Murphey, Jaclyn Pannell,** or **Bradley**

**Harris**. One reason for this aggressive medicating practice was that **Bradley Harris** wanted to ensure that the beneficiaries' medical records contained documentation that would justify billing Medicare at the higher continuous care billing rate. There were instances when these excessive dosages resulted in serious bodily injury or death to the beneficiaries.

42.     For example, on or around May 25, 2013, **Bradley Harris** texted **Taryn Stuart** to take over continuous care of beneficiary J.J. because the current nurses were not "doing there job," and that "I told this chick if she would just give her 1ml of Ativan and turn her she would die." **Taryn Stuart** agreed to take over the continuous care and texted **Jessica Love** that **Bradley Harris** "doesn't think the Nigerian nurses are medicating properly. Wants me to go cause he knows I do it right." **Bradley Harris** then texted, "[expletive] woman is still alive . . . . I need some boots on the ground." **Taryn Stuart** proceeded to the beneficiary's home, where she stayed in contact with **Bradley Harris** while she medicated the beneficiary. **Bradley Harris** texted regarding the need to medicate in order to justify continuous care treatment: "We have very strict guidelines that we must be providing skilled nursing interventions at least every hour to stay in there." After the beneficiary died, **Taryn Stuart** texted **Bradley Harris**, "Just FYI, I'm gonna quit being so good at cc so you won't wanna send me. lol," to which **Bradley Harris** responded, "Haha. Nice work."

       D. Kickbacks for hospice beneficiary referrals

43.     It was part of the scheme to defraud for the defendants and others to pay salaries or other forms of remuneration to physicians and assisted living facilities in

exchange for referrals of Medicare or Medicaid beneficiaries to Novus hospice care, in violation of Novus's Medicare provider agreement and federal law.

44.     As part of the scheme to pay kickbacks in exchange for hospice referrals, defendants **Bradley Harris**, **Amy Harris**, **Jessica Love**, **Samuel Anderson**, and **Slade Brown** recruited physicians who would refer hospice patients in exchange for medical director salaries.  As a result of this effort, Novus successfully recruited defendants **Mark Gibbs**, **Laila Hirjee**, **Syed Aziz**, **Reziuddin Siddique**, and **Charles Leach**, all of whom referred Medicare beneficiaries primarily to Novus while working as Novus medical directors in exchange for their medical director salaries.  For example, **Slade Brown** set up a kickback relationship with **Charles Leach**, whereby **Charles Leach** would refer patients from another hospice he had worked with.  **Charles Leach** memorialized this agreement in an email to **Slade Brown**, in which he discussed a patient he had sent to Novus.  **Charles Leach** wrote, "Ok senior [expletive] ain't happy . . . . I sent her from [Hospice Company] to Novus obviously to generate business for you.  I do appreciate all your help.  My goal was to send as much business to Brad and Amy in return for directorships etc."

45.     It was further part of the kickback scheme that defendants **Bradley Harris**, **Slade Brown**, and **Samuel Anderson** provided remuneration to assisted living facilities in exchange for patient referrals.  This remuneration included paying for Certified Nursing Assistants to staff the assisted living facilities.

E. Concealment of the fraud

46.     In addition to falsifying or destroying documents, the defendants took other actions to conceal their fraud from Medicare.  For example, upon learning of the investigation and believing that a search warrant was imminent, **Bradley Harris, Amy Harris**, and others shredded or removed documents from the Novus office.

47.     As a result of the entire scheme described in Count One, the defendants caused the loss of millions of dollars to Medicare and Medicaid.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347).

Counts Two through Three
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

48.     The allegations contained in paragraphs one through forty-seven of this

Indictment are realleged and incorporated by reference as though fully set forth herein.

49.     For each count listed in the chart below, on or about the date stated, in the

Northern District of Texas and elsewhere, the defendants, **Bradley Harris**, **Reziuddin**

**Siddique, Ali Rizvi,** and **Tammie Little**, aided and abetted by each other and by other

persons known and unknown to the grand jury, knowingly and willfully executed the

above-described scheme and artifice to defraud and to obtain, by means of materially

false and fraudulent pretenses and representations, money and property owned by and

under the custody and control of Medicare, a health care benefit program as defined in 18

U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits,

items, and services, in that **Bradley Harris**, **Reziuddin Siddique, Tammie Little**, and

**Ali Rizvi** submitted or caused to be submitted the listed claims for reimbursement

knowing those claims were materially false and fraudulent, in that 1) **Bradley Harris,**

**Tammie Little**, and **Ali Rizvi** used unlawful methods to identify and recruit these

beneficiaries, 2) **Reziuddin Siddique** falsely certified these beneficiaries as terminally ill

and eligible for hospice services, and 3) these beneficiaries were provided fraudulent

hospice services by Novus.

| Count Number | Medicare Beneficiary | Dates of Hospice Service | Amount Billed for Hospice Services | Amount Paid for Hospice Services |
|---|---|---|---|---|
| 2 | J.M.-1 | September 5, 2014 – December 3, 2014 | $16,106.11 | $13,921.98 |
| 3 | B.B. | September 19, 2014 – December 15, 2014 | $16,032.60 | $13,642.27 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

Count Four
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

50.     The allegations contained in paragraphs one through forty-seven of this
Indictment are realleged and incorporated by reference as though fully set forth herein.

51.     For each count listed in the chart below, on or about the date stated, in the
Northern District of Texas and elsewhere, the defendants, **Bradley Harris**, **Amy Harris**,
**Syed Aziz, Ali Rizvi,** and **Tammie Little**, aided and abetted by each other and by other
persons known and unknown to the grand jury, knowingly and willfully executed the
above-described scheme and artifice to defraud and to obtain, by means of materially
false and fraudulent pretenses and representations, money and property owned by and
under the custody and control of Medicare, a health care benefit program as defined in 18
U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits,
items, and services, in that **Bradley Harris**, **Amy Harris, Syed Aziz, Ali Rizvi**, and
**Tammie Little**, submitted or caused to be submitted the listed claims for reimbursement
knowing those claims were materially false and fraudulent, in that 1) **Bradley Harris**,
**Amy Harris, Ali Rizvi**, and **Tammie Little** used unlawful methods to identify and
recruit this beneficiary, 2) **Syed Aziz** falsely certified this beneficiary as terminally ill and
eligible for hospice services, and 3) this beneficiary was provided fraudulent hospice
services by Novus.

| Count Number | Medicare Beneficiary | Dates of Hospice Service | Amount Billed for Hospice Services | Amount Paid for Hospice Services |
|---|---|---|---|---|
| 4 | R.C. | July 31, 2014 – October 28, 2014 | $17,158.45 | $13,842.44 |

In violation of 18 U.S.C. §§ 1347 and 2.

Count Five
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

52.     The allegations contained in paragraphs one through forty-seven of this

Indictment are realleged and incorporated by reference as though fully set forth herein.

53.     For each count listed in the chart below, on or about the date stated, in the

Northern District of Texas and elsewhere, the defendants, **Bradley Harris** and **Patricia**

**Armstrong**, aided and abetted by each other and by other persons known and unknown

to the grand jury, knowingly and willfully executed the above-described scheme and

artifice to defraud and to obtain, by means of materially false and fraudulent pretenses

and representations, money and property owned by and under the custody and control of

Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), in connection

with the delivery of and payment for health care benefits, items, and services, in that

**Bradley Harris** and **Patricia Armstrong** submitted or caused to be submitted the listed

claims for reimbursement knowing those claims were materially false and fraudulent, in

that 1) **Bradley Harris** and **Patricia Armstrong** used false or fraudulent pretenses,

misrepresentations, or promises in admitting the beneficiary to hospice and 2) this

beneficiary was provided fraudulent hospice services by Novus.

| Count Number | Medicare Beneficiary | Dates of Hospice Service | Amount Billed for Hospice Services | Amount Paid for Hospice Services |
|---|---|---|---|---|
| 5 | S.D. | June 6, 2013 – June 8, 2013 | $778.52 | $444.45 |

In violation of 18 U.S.C. §§ 1347 and 2.

Counts Six through Eight
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

54.     The allegations contained in paragraphs one through forty-seven of this Indictment are realleged and incorporated by reference as though fully set forth herein.

55.     For each count listed in the chart below, on or about the date stated, in the Northern District of Texas and elsewhere, the defendants, **Bradley Harris**, and **Mark Gibbs**, aided and abetted by each other and by other persons known and unknown to the grand jury, knowingly and willfully executed the above-described scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in that **Bradley Harris** and **Mark Gibbs** submitted or caused to be submitted the listed claims for reimbursement knowing those claims were materially false and fraudulent, in that 1) **Mark Gibbs** falsified face-to-face encounters that were used to recertify these beneficiaries as terminally ill and eligible for hospice services; and 2) these beneficiaries were provided fraudulent hospice services by Novus.

| Count Number | Medicare Beneficiary | Date of Face-to-Face Encounter | Amount Billed for Hospice Services | Amount Paid for Hospice Services |
|---|---|---|---|---|
| 6 | S.D. | September 5, 2013 | $12,886.01 | $9,110.09 |
| 7 | S.D. | October 31, 2013 | $4,411.24 | $3,143.74 |
| 8 | E.O. | July 18, 2013 | $21,407.48 | $8,138.40 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

Counts Nine through Eleven
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

56.     The allegations contained in paragraphs one through forty-seven of this
Indictment are realleged and incorporated by reference as though fully set forth herein.

57.     For each count listed in the chart below, on or about the date stated, in the
Northern District of Texas and elsewhere, the defendants, **Bradley Harris**, **Laila Hirjee**,
and **Melanie Murphey** aided and abetted by each other and by other persons known and
unknown to the grand jury, knowingly and willfully executed the above-described
scheme and artifice to defraud and to obtain, by means of materially false and fraudulent
pretenses and representations, money and property owned by and under the custody and
control of Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), in
connection with the delivery of and payment for health care benefits, items, and services,
in that **Bradley Harris**, **Laila Hirjee**, and **Melanie Murphey** submitted or caused to be
submitted the listed claims for reimbursement knowing those claims were materially false
and fraudulent, in that 1) **Laila Hirjee** falsified face-to-face encounters that were used to
recertify these beneficiaries as terminally ill and eligible for hospice services; and 2)
these beneficiaries were provided fraudulent hospice services by Novus.

| Count Number | Medicare Beneficiary | Date of Face-to-Face Encounter | Amount Billed for Hospice Services | Amount Paid for Hospice Services |
|---|---|---|---|---|
| 9 | D.P. | April 19, 2014 | $16,649.86 | $6,322.43 |
| 10 | J.F. | April 19, 2014 | $17,053.89 | $6,322.43 |
| 11 | J.M.-2 | October 24, 2013 | $14,905.99 | $9,187.04 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

Count Twelve
Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

58.     The allegations contained in paragraphs one through forty-seven of this Indictment are realleged and incorporated by reference as though fully set forth herein.

59.     For each count listed in the chart below, on or about the date stated, in the Northern District of Texas and elsewhere, the defendants, **Bradley Harris, Patricia Armstrong, Melanie Murphey,** and **Charles Leach** aided and abetted by each other and by other persons known and unknown to the grand jury, knowingly and willfully executed the above-described scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in that **Bradley Harris Patricia Armstrong, Melanie Murphey,** and **Charles Leach** submitted or caused to be submitted the listed claims for reimbursement knowing those claims were materially false and fraudulent, in that 1) **Bradley Harris, Patricia Armstrong,** and **Melanie Murphey** falsely placed this beneficiary on continuous care hospice service without a physician's order or physician plan of care, and 2) this beneficiary was provided fraudulent hospice services by Novus, including the administration of morphine from a prescription that was unlawfully pre-signed by **Charles Leach**.

| Count Number | Medicare Beneficiary | Dates of Continuous Care Service | Amount Billed for Hospice Services | Amount Paid for Hospice Services |
|---|---|---|---|---|
| 12 | J.K. | December 12, 2014 – December 12, 2014 | $558.85 | $547.67 |

In violation of 18 U.S.C. §§ 1347 and 2.

<u>Count Thirteen</u>
Unlawfully Distribution of a Controlled Substance
(Violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2)

60.     The allegations contained in paragraphs one through forty-seven of this Indictment are realleged and incorporated by reference as though fully set forth herein.

61.     On or about December 21, 2012, in the Northern District of Texas and elsewhere, the defendant **Mark Gibbs**, a registrant authorized to dispense controlled substances, aided and abetted by defendants **Bradley Harris** and **Taryn Stuart,** knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and not for a legitimate medical purpose, a substance containing a detectable amount of morphine, a Schedule II controlled substance, to B.R.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.

Count Fourteen
Unlawfully Distribution of a Controlled Substance
(Violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2)

62.     The allegations contained in paragraphs one through forty-seven of this Indictment are realleged and incorporated by reference as though fully set forth herein.

63.     On or about November 15, 2014, in the Northern District of Texas and elsewhere, the defendant **Charles Leach**, a registrant authorized to dispense controlled substances, aided and abetted by defendants **Bradley Harris**, **Melanie Murphey**, and **Patricia Armstrong,** knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and not for a legitimate medical purpose, a substance containing a detectable amount of hydromorphone, a Schedule II controlled substance, to S.B.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.

Count Fifteen

Unlawfully Distribution of a Controlled Substance

(Violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2)

64.     The allegations contained in paragraphs one through forty-seven of this Indictment are realleged and incorporated by reference as though fully set forth herein.

65.     On or about January 12, 2014, in the Northern District of Texas and elsewhere, the defendant **Laila Hirjee**, a registrant authorized to dispense controlled substances, aided and abetted by defendants **Bradley Harris**, **Patricia Armstrong**, and **Melanie Murphey**, knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and not for a legitimate medical purpose, a substance containing a detectable amount of hydromorphone, a Schedule II controlled substance, to L.V.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.

Notice of Forfeiture
(18 U.S.C. §§ 981(a)(1)(c) and 982(a)(7) and 21 U.S.C. § 853)

66.      The allegations contained in the General Allegations section and Counts
One through Fifteen of this Indictment are hereby realleged and incorporated by
reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(c) and
982(a)(7).

67.      Upon conviction of the offenses set forth in Counts One through Twelve of
this Indictment, the defendants, **Bradley Harris, Amy Harris, Melanie Murphey,
Patricia Armstrong, Mark Gibbs, Laila Hirjee, Syed Aziz, Reziuddin Siddique,
Charles Leach, Jessica Love, Ali Rizvi, Tammie Little, Mary Jaclyn Pannell, Taryn
Stuart, Slade Brown,** and **Samuel Anderson**, shall forfeit to the United States of
America, pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 982(a)(7), any property, real or
personal, that constitutes or is derived, directly or indirectly, from gross proceeds
traceable to the commission of the offenses.

68.      Upon conviction of the offenses set forth in Counts Thirteen through
Fifteen of this Indictment, the defendants **Charles Leach**, **Bradley Harris**, **Melanie
Murphey**, **Patricia Armstrong**, **Mark Gibbs**, **Laila Hirjee**, and **Taryn Stuart** shall
forfeit to the United States of America, pursuant to 21 U.S.C. § 853, shall forfeit to the
United States of America any property constituting, or derived from, any proceeds
obtained, directly or indirectly, as the result of such offenses and any property used, or
intended to be used, in any manner or part, to commit, or to facilitate the commission of,
the offenses.

69.     Upon conviction of the offenses set forth in Counts Thirteen through Fifteen of this Indictment, the defendants **Charles Leach**, **Bradley Harris**, **Melanie Murphey**, **Patricia Armstrong**, **Mark Gibbs**, **Laila Hirjee**, and **Taryn Stuart** shall forfeit to the United States of America, pursuant to 21 U.S.C. § 853, shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses.

70.     The property to be forfeited includes, but is not limited to, the following:

    (a) The proceeds from the offense alleged in Counts One through Twelve, in the form of a money judgment from **Bradley Harris, Amy Harris, Melanie Murphey, Patricia Armstrong, Mark Gibbs, Laila Hirjee, Syed Aziz, Reziuddin Siddique, Charles Leach, Jessica Love, Ali Rizvi, Tammie Little, Mary Jaclyn Pannell, Taryn Stuart, Slade Brown,** and **Samuel Anderson**;

    (b) The proceeds from the offense alleged in Counts Thirteen through Fifteen, in the form of a money judgment from defendants **Charles Leach, Bradley Harris, Melanie Murphey, Patricia Armstrong, Mark Gibbs, Laila Hirjee,** and **Taryn Stuart**;

    (c) $103,869.37 in United States currency seized on or about April 14, 2016 from defendant **Bradley Harris.**

71.     If any of the property described above, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without

difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c).

A TRUE BILL.

_____
FOREPERSON

JOHN R. PARKER
UNITED STATES ATTORNEY

_____
RUSSELL W. FUSCO
Assistant United States Attorney
Texas State Bar No. 24069743
KATHERINE E. PFEIFLE
Assistant United States Attorney
Texas State Bar No. 24041912
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8616
Facsimile: 214-659-8809
russell.fusco@usdoj.gov

Indictment - Page 29

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

**3-17CR-103-M**

BRADLEY J. HARRIS (01)
AMY L. HARRIS (02)
MELANIE L. MURPHEY (03)
PATRICIA B. ARMSTRONG (04)
MARK E. GIBBS, M.D. (05)
LAILA N. HIRJEE, M.D. (06)
SYED M. AZIZ, M.D. (07)
REZIUDDIN SIDDIQUE, M.D. (08)
CHARLES R. LEACH, M.D. (09)
JESSICA J. LOVE (10)
ALI RIZVI (11)
TAMMIE L. LITTLE (12)
MARY JACLYN PANNELL (13)
TARYN E. STUART (14)
SLADE C. BROWN (15)
SAMUEL D. ANDERSON (16)

SEALED INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud

18 U.S.C. §§ 1347 and 2
Health Care Fraud

21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2
Unlawfully Distribution of a Controlled Substance

18 U.S.C. §§ 981(a)(1)(c) and 982(a)(7) and 21 U.S.C. § 853
Forfeiture Notice

15 Counts

A true bill rendered

DALLAS                                                                    FOREPERSON

Filed in open court this 22nd day of February, 2017.

**Warrant to be Issued – Bradley J. Harris (1), Amy L. Harris (2), Melanie L. Murphey (3), Patricia B. Armstrong (4), Mark E. Gibbs, M.D. (5), Laila N. Hirjee, M.D. (6), Syed M. Aziz, M.D. (7), Reziuddin Siddique, M.D. (8), Charles R. Leach, M.D. (9), Ali Rizvi (11), Tammie L. Little (12), Mary Jaclyn Pannell (13), Taryn E. Stuart (14), Slade C. Brown (15)**

**Summons to Issue – Jessica J. Love (10) and Samuel D. Anderson (16)**

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending