IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:17-CR-103-M |
| v. | **FILED EX PARTE AND UNDER SEAL** |
| BRADLEY J. HARRIS (01)<br>AMY HARRIS (02) | |

**GOVERNMENT'S EX PARTE MOTION FOR ARREST
AND REVOCATION OF PRE-TRIAL RELEASE**

The government moves this Court pursuant to 18 U.S.C. § 3148(b) to issue warrants for the arrests of defendants Bradley Harris and Amy Harris, and to order a hearing or hearings to determine whether to revoke Bradley Harris's and Amy Harris's pre-trial release.

The government offers the following in support of its motion:

**I.   Background**

On February 23, 2017, a federal grand jury indicted Bradley Harris for Conspiracy to Commit Health Care Fraud, Health Care Fraud, and Unlawful Distribution of a Controlled Substance, and Amy Harris for Conspiracy to Commit Health Care Fraud and Health Care Fraud.  (Dkt. 1.)  Amy Harris was released after her initial appearance subject to certain conditions, including the first standard condition that she "must not violate federal, state, or local law while on release."  (Dkt. 19 ¶ 1.)  The government moved for pre-trial detention of Bradley Harris, alleging in part that Harris fraudulently transferred money between accounts at Texas Capital Bank.  (Dkt. 10.)  On March 3,

**Government's Ex Parte Motion for Arrest and Revocation of Pre-trial Release—Page 1**

2017, a Magistrate Court heard the government's motion and denied it, but admonished Bradley Harris and imposed conditions of release, including the first standard condition that Harris "must not violate federal, state, or local law while on release." (*See* dkt. 93 ¶ 1.)

## II.  Violations of Pre-Trial Release

The government offers the following evidence to show that Bradley Harris and Amy Harris (the Harrises) violated the first standard condition of their terms of release by engaging in bank fraud, a violation of federal criminal statute 18 U.S.C. § 1344. Bradley Harris further violated the first standard condition of his terms of release by engaging in online gambling, a violation of Texas Penal Code § 47.02.

### A. The Harrises Obtained a $50,000 Business Line of Credit and Bradley Harris Used All of the Money to Engage in Illegal Online Gambling.

1. In fall of 2017, Federal Bureau of Investigation Special Agent (SA) Thomas Cook received information indicating that the Harrises had been involved in potentially illegal activity. In the course of investigating the information, SA Cook obtained bank records from Compass Bank, Texas Capital Bank, Capital One, USAA Federal Savings Bank (USAA), and Square.

2. ***The Harrises Obtained a $50,000 Business Line of Credit.*** On December 4, 2017, SA Cook received bank records from BBVA Compass Bank (Compass). The records showed that on May 22, 2017, the Harrises applied for a $50,000 unsecured business line of credit at Compass utilizing a company they owned called Zodie, Inc. (Zodie). During the timeframe of conduct described in the indictment, the Harrises used

Zodie to facilitate the receipt of management fees from Novus Health Services, the company named in the indictment. On the Compass business-loan application, which the Harrises both signed, the Harrises described Zodie as a "management and consulting business," and stated that the purpose of the loan was for "business cash flow." By signing the application, the Harrises agreed that the funds would not be used for any personal, household, or family expenses. Compass approved the loan on June 12, 2017, and made the funds available to Zodie.

3. ***Bradley Harris or Amy Harris Advanced All $50,000 from the Credit Line.*** Over the next two weeks following May 22, 2017, either Bradley Harris or Amy Harris executed 27 transactions to advance all $50,000 available from the line of credit, either directly or indirectly, to three different accounts at Compass:

    a. Account 4835 in the name of Bradley Harris;

    b. Account 4622 in the names of Bradley Harris and Amy Harris; and

    c. Account 3723 in the name of Zodie, Inc.

The Harrises opened all three accounts on May 22, 2017, at the same time that they applied for the line of credit. All three accounts listed the account-holder's address as 10700 Spring Lake Road, Frisco, Texas, which is the home address of Bradley and Amy Harris. A review of the signature pages on the accounts indicated that Bradley Harris was a signatory on all three accounts. Amy Harris's signature appeared on the 4622 and 3723 accounts.

4. ***Bradley Harris Spent All $50,000 at an Online Gambling Website.***
Evidence from bank records and witness interviews shows that Bradley Harris, a known

**Government's Ex Parte Motion for Arrest and Revocation of Pre-trial Release—Page 3**

gambler, used the entire $50,000 advanced from the Compass loan to engage in illegal online gambling. At the start of the two-week period in which he advanced the $50,000, the Harrises had approximately $7,000 in the accounts. Over the next two weeks, Bradley Harris began sending money from the Compass accounts to Bam Software and Services (Bam), a business whose purpose SA Cook determined was online horse-betting.[1] During this period, Bradley Harris sent $61,737.62 to, and received $15,342.37 from, Bam. Bank records show that virtually all of the gambling proceeds from Bam were credited in Bradley Harris's name. Only $3,635.41 was deposited into the Compass accounts from other sources during this period. In addition to the payments to Bam, $11,920 was withdrawn from the Compass accounts using Texas area ATM machines. Less than $500 in additional withdrawals were made for non-ATM or non-gambling purposes.

5.  ***Online Gambling is Illegal in Texas.*** On January 3, 2018, SA Cook interviewed Devon Bjansky, General Counsel of the Texas Racing Commission (TRC). Bjansky confirmed that current Texas law requires all horse betting in the State of Texas to take place at the racetrack. For example, Lone Star Park in Grand Prairie, Texas, is an authorized and licensed horse-racing facility. Thus, it can accept wagers on horse races. However, it is a violation of Texas law for bettors to make a wager online outside of a designated facility. *See* Tex. Pen. Code § 47.02.[2] Bjansky said the TRC had taken

---

[1]  According to its website, Bam is located in San Francisco, California. *See* http://bamsas.com.

[2]  Section 47.02 makes gambling illegal in Texas, but creates an exception if the conduct was permitted

**Government's Ex Parte Motion for Arrest and Revocation of Pre-trial Release—Page 4**

proactive steps to ensure that companies did not accept online bets from bettors in Texas. For example, the TRC won a lawsuit against an online horse-betting platform that was affirmed at the Fifth Circuit.[3]  As a result of this case, the TRC had agreements with other online horse-betting websites to block bettors who reside in Texas.

    **B.**     **Bradley Harris Made Contradictory Dispute and Fraud Claims to Compass Regarding the Bam Charges, and Compass Denied Both Claims.**

    6.     On July 12, 2017, Bradley Harris reported his transactions with Bam to the Compass dispute department, claiming that he was not satisfied with services Bam had provided.  Compass denied the dispute claim.  The next day, Bradley Harris reported the same transactions to Compass's fraud and security department, where he now claimed that the charges were fraudulent.  Specifically, Bradley Harris gave the indicated answers to the following questions:

    a. Is this dispute concerning a mail/telephone order, e-commerce or internet transaction that you do not recognize and did not authorize? **YES**

    b. Is this dispute concerning the non-receipt of merchandise or services from the merchant? **NO**

---

under the Texas Racing Act, Tex. Civ. Stat. art. 179e (TRC).  *See* Tex. Pen. Code § 47.02(c)(5).  The TRC, in turn, permits certain wagers to be made at a racetrack, but specifically states that "[e]xcept as provided by this section, a person may not place, in person, by telephone, ***or over the Internet***, a wager for a horse race or greyhound race conducted inside or outside this state."  Tex. Civ. Stat. art. 179e § 11.05 (emphasis added).

[3] The government has identified this case as *Churchill Downs Inc. v. Trout*, 589 F. App'x 233 (5th Cir. 2014), in which the Fifth Circuit affirmed a district court's finding that the Texas Racing Act's in-person betting requirement does not violate the Dormant Commerce Clause of the Constitution.

**Government's Ex Parte Motion for Arrest and Revocation of Pre-trial Release—Page 5**

  c. Does this dispute pertain to the cancellation or return of services or merchandise? **NO**

  d. Is this dispute concerning a processing error from the merchant? **NO**

  e. Is this a quality of service/merchandise dispute? **NO**

  f. Is this dispute concerning funds dispensed from an international ATM? **NO**

  g. Is this dispute concerning a fraud charge? **YES**

  h. Has your card been reported as lost or stolen? **YES**

  7. Compass's fraud investigators found that Bradley Harris's statement during the dispute phase that he did not like the services of the Bam website amounted to an admission that he had made the charges, and denied the claim.  On July 26, 2017, Compass's fraud and security department decided to close all of the Harrises' accounts and cease its banking relationship with Bradley Harris.  On December 6, 2017, SA Cook telephonically interviewed Debby Young, Fraud Operations, Compass Bank, who confirmed this information.

  8. As of this filing, Compass has not recovered any of the $50,000 that Harris diverted to the Bam online gambling website.  On November 22, 2017, Compass "charged off" the Harrises' loan, meaning that they consider it a loss.

**C. The Harrises Made Material Misrepresentations to Compass During the Loan Application Process.**

  9. SA Cook determined during his investigation that Compass would not have approved (or even submitted for approval) the Harrises' business loan application had it known the truth behind their various misrepresentations.

10. ***The Harrises lied about the purpose of the loan.*** Khatija Hussain (Hussain), Branch Retail Executive at Compass, remembered when Bradley and Amy Harris came into the Stonebriar bank branch to apply for Zodie's business line of credit. Hussain provided SA Cook with records showing that the Harrises made the indicated responses to the following questions during the application interview:

   a. Is the current customer's business activity involved in any Internet Gambling business activities in any way? **NO**

   b. Does the customer agree not to use its account(s) with BBVA Compass for transactions deriving from or related to any Internet Gambling activities? **YES**

   c. Customer agrees to notify BBVA Compass in the event of any change in circumstance related to the previous two questions. **YES**

Hussain explained she would not have submitted the Harrises' application for a business line of credit on behalf of Zodie had she known the funds would be used for Internet gambling.

11. ***The Harrises falsely represented Zodie's income and profitability.*** The Harrises indicated on the Compass loan application that Zodie's revenue last year was $200,000, and that its net income was $110,000. They did not explain that Zodie's business had been substantially affected by the indictment in this matter. Hussain told SA Cook that she would not have submitted Zodie's business loan application had she known that its current income was substantially less than what the Harrises indicated on

the loan application, and that she would normally ask in an interview whether the business was still operational.

12.     ***The Harrises failed to disclose the existence of this federal criminal lawsuit.***  Hussain asked the Harrises if they or their company, Zodie, were a party to any claim or lawsuit.  The Harrises indicated that they were not party to any lawsuits, and made no mention of the criminal charges that they are facing in this Court.  Hussain told SA Cook that, had she known about the federal criminal charges, she would have included it in her comments section to the Compass underwriting department.  Hussain felt that the omission of this information was a misrepresentation and should have been disclosed in response to the question about any ongoing claims or lawsuits.

   **D.    Bradley Harris Continued to Engage in Illegal Gambling
          with Money Drawn from Other Banks.**

13.     On July 27, 2017, Bradley Harris opened Texas Capital Bank account Zodie 6147 under the name of Zodie, Inc.  Bradley Harris had an existing relationship with Texas Capital Bank, as it had been the primary bank for a number of the Novus Health Services companies.  In total, Bradley Harris had ten different accounts with Texas Capital Bank.  Bradley Harris told Texas Capital Bank that Zodie was a Management Consulting and Private Transportation company.

14.     Between July 10, 2017, and December 8, 2017, Bradley Harris sent $113,684 to NH Play, a business whose purpose SA Cook determined was online horse-

betting.[4]  This money came in part from a check for $65,300 that Amy Harris wrote to another Harris company, HNA Holdings LLC, on July 26, 2017, from a joint checking account that Amy Harris held with her mother.  In one instance, Bradley Harris emailed Texas Capital Bank with instructions to wire funds to NH Play.  Bradley Harris also used multiple accounts to transfer funds from Texas Capital Bank that were eventually sent to NH Play.  For example, on October 31, 2017, Harris deposited $13,000 in cash at Texas Capital Bank's Plano Banking Center, into Account 8383 titled HNA Holdings (HNA 8383).  On November 1, 2017, Harris transferred $12,200 from Texas Capital account HNA 8383 to his newly opened Texas Capital account, Zodie 6147.  That same day, Harris authorized a wire transfer of $11,667 from Zodie 6147 to NH Play.  A review of all of the accounts Bradley Harris had access to at Texas Capital Bank revealed a similar pattern: money was deposited into accounts of non-functioning companies (primarily HNA 8383), transferred to Zodie 6147, and then spent at NH Play.

### III.  Conclusion

The government believes that defendants Bradley Harris and Amy Harris committed violations of federal and state law by defrauding and abusing financial institutions so that Bradley Harris could engage in illegal online betting.  Therefore, the government asks the Court to issue warrants for the arrests of Bradley Harris and Amy

---

[4] According to Bloomberg.com, NHPlay.com, Inc. is based in Saratoga Spring, New York. *See* https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=51785378.

Harris, and to schedule a hearing or hearings to determine whether to revoke each of the Harrises' pre-trial release.

        ERIN NEALY COX
        UNITED STATES ATTORNEY

        /s/ Russell W. Fusco
        RUSSELL W. FUSCO
        Assistant United States Attorney
        Texas Bar No. 24069743
        1100 Commerce Street, Third Floor
        Dallas, TX  75242-1699
        Telephone:  214-659-8600
        Facsimile:  214-659-8809
        Email: russell.fusco@usdoj.gov